IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RAYMOND LEE STOOKEY, )
)
Plaintiff, )
) CIVIL ACTION
v. )
) No. 17-2454-JWL
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
Defendant. )
_____ )

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) evaluation of the opinion evidence, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING this case for further proceedings.

I. Background

Plaintiff argues that the ALJ's determination of an onset date is not supported by substantial evidence, and his residual functional capacity (RFC) assessment with regard

to both mental and physical impairments is unsupported because he erred in weighing the medical opinions in the record. His final argument is that the ALJ failed to consider properly the record evidence consisting of third-party statements of Plaintiff's wife and son, and of the limitations resulting from his history of cubital tunnel syndrome. He seeks remand with an order directing the Commissioner to "grant his claims for disability insurance benefits and supplemental security income benefits." (Pl. Brief 57).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court notes that the ALJ determined Plaintiff was disabled beginning May 9, 2013. Therefore, to the extent that Plaintiff asserts error in the ALJ's evaluation of opinions formulated thereafter or impairments diagnosed thereafter, any such error appears to be harmless. Nevertheless, because the court finds error in the ALJ's evaluation of Dr. Banks's medical opinions and the third-party opinions which were formulated before May 9, 2013, it finds that remand is necessary for a proper evaluation. Therefore, it will not consider whether allegations of subsequent errors provide another basis for remand. Plaintiff may make any argument he desires in that regard to the Commissioner on remand.

Although Plaintiff seeks remand for an immediate award of benefits, he provided no legal authority for that argument and did not develop it in his Brief. Wall, 561 F.3d at 1066 (issue presented without developed argumentation is waived). Plaintiff has waived consideration of this issue by failing to develop any argument regarding it. Franklin Sav. Corp. v. U.S., 180 F.3d 1124, 1128 n.6 (10th Cir. 1999) (arguments presented

4

superficially are waived) (citing Sports Racing Servs., Inc. v. Sports Car Club of America, Inc. 131 F.3d 874, 880 (10th Cir. 1997) (dismissing claims never developed, with virtually no argument presented)).

## II.     Dr. Banks's 2010 Opinions

Plaintiff argues that the ALJ erred in weighing Dr. Banks's October 2010 opinion and according it "no weight beyond the limitation to sedentary work." (R. 1820). This is so in Plaintiff's view because the ALJ erroneously relied on his finding that a December 10, 2010 MRI of his right knee revealed only mild osteoarthrosis. (Pl. Br. 51) (citing the ALJ's decision at R. 1820). He argues that the MRI report reveals, first, increased signal from the earlier repair of the anterior cruciate ligament, suggesting that partial tear, early graft impingement, or graft degeneration should be considered; and second, "mild tricompartmental degenerative arthrosis and chondromalacia with 3mm osteochondral defect along the weightbearing surface of the medial femoral condyle, new from prior study." Id. (quoting R. 1264). He also argues that the ALJ's finding that Plaintiff was only limited due to his leg pain is unsupported by the record. Id. at 52. Finally, Plaintiff points to opinions Dr. Banks formulated on August 18, and August 31, 2010 and argues that the ALJ failed to consider or to identify the weight accorded to these opinions.

The Commissioner argues that the ALJ gave good reasons supported by the record to discount Dr. Banks's opinion. She argues that, as the ALJ found, nothing in the record suggests debilitating symptoms during that period, as evidenced by only "mild degenerative spurring, and mild degenerative arthrosis" on the right knee MRI's, and by Plaintiff's report to Dr. Banks that he could not exercise due to leg pain. (Comm'r Br. 6).

5

She argues that although the ALJ did not discuss the August 2010 opinions, those opinions pertain to the issue of disability itself which is reserved to the Commissioner, and any error was harmless because an ALJ is not required to discuss every piece of evidence, and he did discuss the October 2010 opinion issued just two months later. Id. at 7-8. She also points out that the ALJ discussed Dr. Bleazard's July 2010 opinion which found Plaintiff's walking was unimpaired. Id. at 8.

### A. The ALJ's Evaluation of Dr. Banks's Opinions

The ALJ discussed his consideration of Dr. Banks's October 14, 2010 opinion:

> Based on the claimant's peripheral neuropathy and complaints of chronic pain, Dr. Banks limited the claimant to sedentary work with no use of the left hand, no postural activities, and "severe limitations" against unprotected heights, moving machinery, driving, or dusts and fumes. Dr. Banks described the claimant's pain and fatigue as "debilitating," resulting in poor to no ability to engage in even low-stress work (Ex. 18F). While the undersigned has limited the claimant to sedentary work, nothing on file suggests that the claimant's symptoms reached a debilitating level during the period at issue. This is evident by the right knee MRIs, which revealed only mild degenerative spurring (Ex. 6F at 3-5) and mild osteoarthrosis (Ex. 27F at 82-83). It is also inconsistent with Dr. Banks' records, which indicate that he recommended exercise. The claimant was only limited due to his leg pain (Ex. 20F at 2). Finally, it is inconsistent with Dr. Danda's records from 2012 that the claimant's pain was controlled adequately (Ex. 23F). For this reason, the undersigned has given this assessment no weight beyond the limitation to sedentary work.

(R. 1820). As the Commissioner acknowledges, the ALJ did not discuss Dr. Banks's opinions in August 2010.

### B. Analysis

As Plaintiff argues, the right knee MRI on December 9, 2010 revealed more than "mild osteoarthrosis." The "Findings" of the MRI report note:

6

> The patient is status post graft repair of the anterior cruciate ligament. Graft fibers are intact, with mild increased signal in the substance of the graft at its distal aspect that has slightly increased from prior study. The femoral and tibial osseous tunnels are stable. Graft fibers are parallel with Blumensaat's line. No evidence of arthrofibrosis. Posterior cruciate ligament is intact.
>
> There are moderate tricompartmental hypertrophic changes, with thinning and surface irregularity of the articular cartilage throughout. 3 mm full thickness cartilage defect along the weight bearing surface of the medial femoral condyle is new from prior exam. There is associated mild subchondral edema. Mild thinning and surface irregularity of the lateral and anterior compartment cartilage, without full thickness defect.

(R. 1263). The physician reading the MRI stated his "Impression:"

> 1. Status post graft reconstruction of the anterior cruciate ligament. The ACL graft is intact, with mild increased signal in the distal graft fibers, progressed from prior study. Consider partial tear, early graft impingement, or graft degeneration.
> 2. Mild tricompartmental degenerative arthrosis and chondromalacia. There is a 3 mm osteochondral defect along the weight bearing surface of the medial femoral condyle, new from prior study.

(R. 1264).

Moreover, earlier in the decision when summarizing this MRI, the ALJ recognized that between the September 2009 MRI and the December 2010 MRI Plaintiff had developed degenerative arthrosis and chondromalacia. (R. 1818). The issue in this case is when did Plaintiff's impairments became disabling, and the ALJ acknowledges that Plaintiff's condition was worsening over time. (R. 1820-22). The interim changes revealed by the December 2010 MRI, and recognized at least partly by the ALJ, suggest that the worsening may have occurred earlier, and beg for an explanation, especially since the ALJ relied on the December 2010 MRI to discount Dr. Banks's opinion that Plaintiff was disabled much earlier.

7

This ambiguity is compounded by the facts that the ALJ's decision may be read to suggest that Dr. Banks believed Plaintiff was functionally limited only by leg pain, and that the ALJ did not discuss Dr. Banks's August 2010 opinions. As the Commissioner suggests, there may be reasons to discount these facts in the record evidence. However, that rationale is for the Commissioner to explain in the first instance, not for her counsel or the court to provide in a post hoc rationalization. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005); see also, Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). Remand is necessary for the Commissioner to evaluate Dr. Banks's opinions.

## III.  Third Party Opinions

Because remand is necessary in any case, the court will not belabor the ALJ's failure to mention the lay opinions of Plaintiff's wife and son. As Plaintiff suggests, his wife provided three third-party function reports (R. 194-203, 1053-60, 1118-25), and his son provided one. (R. 1061-68). However, there is no acknowledgment in the decision at issue that these reports were provided or that the ALJ had considered them. The Commissioner acknowledges that "the ALJ did not expressly consider the third-party statements," but suggests that the error was harmless because the statements were cumulative of Plaintiff's statements and allegations. (Comm'r Br. 16). The question of whether the evidence is cumulative is best left to the ALJ in this case and the court should not weigh that evidence in the first instance.

Moreover, in the Tenth Circuit, an ALJ is relieved from the requirement to make specific, written findings regarding each lay witness's opinion only when the decision otherwise reflects that the ALJ considered that opinion. Blea, 466 F.3d at 914-15; Adams

v. Chater, 93 F.3d 712, 715 (10th Cir. 1996). And, as the Blea court noted, "[h]ere, the ALJ made no mention of [this third-party] testimony, nor did he refer to the substance of [the] testimony anywhere in the written decision. Thus, it is not at all 'clear that the ALJ considered [that] testimony in making his decision.'" Blea, 466 F.3d at 915 (quoting Adams, 93 F.3d at 715).

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING this case for further proceedings.

Dated July 11, 2018, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**